## HADDOCK v. STICELBER & MONG.

No. 7882—Opinion Filed May 8, 1917.

Rehearing Denied June 12, 1917.

(165 Pac. 1138.)

### 1. Contracts—"Consideration for Promise."

"Any benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

### 2. Release—Consideration—Agreement.

Plaintiffs contracted with defendant and another to drill an oil and gas well to the shallow sand, and when, in the performance of such contract, the shallow sand was reached, the work on the well was stopped, and it was then agreed by plaintiffs and defendant that defendant would employ plaintiffs to drill such well deeper, and pay them therefor at the rate of 90 cents per foot, and

that plaintiffs would do such additional drilling and would release the defendant from liability for payment of the sum of $400, that being one-half of the sum due them for the former drilling, and look alone to the other for the payment of such sum. Held, that the agreement of the defendant to employ plaintiffs to do such additional drilling and to pay them therefor was sufficient consideration to support the promise of plaintiffs to release defendant from the payment of the said sum of $400.

### 3. Trial—Directed Verdict—Evidence.

It is error to direct a verdict for the plaintiffs where, admitting the truth of all the evidence given in favor of defendant, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict should the jury find for the defendant.

(Syllabus by Rummons, C.)

Error from District Court, Rogers County; W. J. Campbell, Judge.

Action by Sticelber & Mong against John Haddock. Judgment for plaintiffs, and defendant brings error. Reversed, and remanded for a new trial.

Adams & Wills, for plaintiff in error.

Victor C. Mieher and A. C. Hough, for defendants in error.

Opinion by RUMMONS, C. This action was commenced in the district court of Rogers county by the defendants in error, hereinafter called plaintiffs, against the plaintiff in error, hereinafter called the defendant, to recover the sum of $1,118 for work and material furnished in drilling an oil and gas well and to foreclose a lien upon certain real estate in Rogers county to satisfy said debt. The defendant answered, admitting that the plaintiffs entered into parol contract with the defendant and the Westerly Oil Company and P. F. Daulgren to drill a well upon the premises described in the petition, one-half of the cost of the drilling said well to be paid by the Westerly Oil Company and P. F. Daulgren, and one-half by the defendant. Defendant further alleges that, when the well was drilled to the depth of 900 feet, the Westerly Oil Company and P. F. Daulgren ordered drilling stopped and declared the well to be a dry hole, at which time the defendant entered into an agreement with the plaintiffs that, if they would collect one-half of the amount due them for drilling said well 900 feet from the Westerly Oil Company and P. F. Daulgren, the defendant would enter into a new contract with plaintiffs for the drilling of said well to a greater depth, at which time the Westerly Oil Company and P. F. Daulgren agreed to pay plaintiffs the sum of $400 of the cost price of drilling said well to a depth of 900 feet, and the plaintiffs agreed to accept said Westerly Oil Company and P. F. Daulgren for said sum of $400. and defendant agreed to pay the balance of $410 for drilling said well. Defendant further alleged that upon the agreement aforesaid the defendant entered into a new contract with the plaintiffs by which he agreed to pay them the sum of 90 cents a foot to drill said well deeper until further orders from him, and alleges that at the depth of 1,220 feet he ordered plaintiffs to stop drilling after they had struck a gas well. Defendant admits that he is indebted to plaintiffs in the sum of $410 under the original contract and the sum of $288 on the last contract and the sum of $20 for tubing, making a total of $718, and alleges payment thereon of the sum of $98, and tenders plaintiffs the sum of $620. Plaintiffs replied, denying generally each allegation contained in the answer, and admitting the payment by defendant of $98.

Defendant, as a witness in his own behalf, testified in substance that he and P. F. Daulgren, of the Westerly Oil Company, and Mr. Mong, one of the plaintiffs, had several conversations about drilling an oil and gas well, and that it was finally agreed between them that the plaintiffs should drill a well upon the premises of defendant to the shallow sand, or about 900 feet in depth, and that the price for drilling said well should be 90 cents per foot, and that in the event they struck oil or gas the defendant should pay plaintiffs the amount due for drilling said well, and that in the event they had a dry hole and no oil or gas was struck defendant should pay plaintiffs one-half of the drilling bill and Mr. Daulgren the other half; that, after plaintiffs had drilled the well to the depth of 900 feet, or to the shallow sand, Mr. Daulgren was unwilling to go any further and declared the well to be a dry hole. Defendant was anxious to drill to a greater depth, and proposed to the plaintiff Mong to settle up for the drilling of the well to the depth of 900 feet, defendant to pay $410, and plaintiffs to collect $400 from Mr. Daulgren, and proposed to enter into a new contract with the plaintiffs, upon such settlement being made, to drill to a greater depth at the price of 90 cents a foot. Defendant says that, when he told Mr. Mong that Mr. Daulgren said stop, Mr. Mong said it was all off and they would stop, and that upon his proposal to Mr. Mong that the plaintiffs take Mr. Daulgren for $400 of the bill and look to him for only $410 thereof and enter into a new contract for drilling the well further Mr. Mong proposed to talk to Mr.

Daulgren over the telephone. Defendant and Mr. Mong went to defendant's house, and Mr. Mong talked with Daulgren over the telephone in the presence of defendant. Aftei the conversation between Mong and Daulgren Mong told defendant that Daulgren agreed **to pay the plaintiffs $400, and the plaintiffs** would agree to take Daulgren for the $400; that the plaintiffs then continued to drill to an additional depth of 320 feet, when they struck gas. At the conclusion of the evidence plaintiffs demurred to the evidence of the defendant, which demurrer was sustained by the court, and the jury was instructed by the court to render a verdict for the plaintiffs against the defendant. The defendant, having saved proper exceptions to the sustaining of the demurrer and direction of the verdict, moved for a new trial, which motion was overruled. The defendant excepted, and brings error.

Under several assignments of error the defendant complains of the action of the trial court in sustaining the demurrer to his evidence and directing a verdict for the plaintiffs. From a reading of the briefs of both counsel for plaintiffs and defendant it seems that the trial court took the view that the defendant rested his defense upon a novation, but that his evidence failed to establish a valid contract of novation, and therefore plaintiffs were entitled to recover. We have reached the conclusion that the case of defendant does not depend alone upon the principles applicable to a contract of novation. The evidence of defendant, which for the purposes of this opinion may be taken as true, shows that plaintiffs and defendant and P. F. Daulgren entered into an agreement for the drilling of the well by plaintiffs and for the payment for such drilling in one contingency by defendant, and in another contingency for the payment of one-half by the defendant and one-half by P. F. Daulgren; that the latter contingency arose, and the defendant and P. F. Daulgren each became liable to plaintiffs for the cost of drilling the well. Defendant says in his testimony:

"I have told you it was fairly understood that this agreement was a partnership matter for 900 feet and there we had an agreement and he accepted the $400 from Mr. Daulgren and left me $410, and I would not go further until that agreement was made, because I did not think we had any necessity for having a dry hole and I was not willing to quit my part of it. I was willing to bet a little more money; if he quit and got out, and we went on down, I was willing to take my chances. It is fair enough to dissolve partnership when you quit."

It thus appears that the parties to this agreement understood that the defendant and P. F. Daulgren were partners in drilling this test well; that in the event the test delevoped a paying well the defendant, receiving the benefit, was to pay the whole of the cost of drilling; in the event it did not each was to pay one-half of the cost of drilling. The well at the depth to which it was agreed to drill produced nothing, and the defendant and P. F. Daulgren became liable to contribute to the payment of the cost of drilling the well. The defendant then proposed to the plaintiffs to employ them to drill deeper if they would agree to look alone to P. F. Daulgren for the payment of half of the cost of drilling to the shallow sand. The plaintiffs advised defendant that Daulgren had agreed to pay the sum of $400 of the amount due for drilling, and told defendant that they would accept him for this amount and look to defendant for the balance of $410 and in consideration thereof the defendant employed the plaintiffs to continue the drilling, and they did so continue until at a depth of 1,220 feet they struck gas. It is urged by plaintiffs that the defendant's evidence fails to establish a novation, in that it does not appear that the three parties ever met and agreed that defendant should be released to the extent of $400, and that Daulgren should be released to the extent of $410, and that plaintiffs would look to Daulgren for the sum of $400. It is further urged by plaintiffs that the evidence does not disclose any consideration to support the agreement to release the defendant to the extent of $400.

We do not believe that this transaction falls within the principles applicable to a novation, for under the contract related by defendant in his testimony either the defendant and Daulgren were liable to plaintiffs as partners, and each therefore liable for the ful amount of the debt, or they were each liable individually for one-half of the costs of the drilling, and no more. Upon the latter hypothesis the defendant is not liable to the plaintiffs for any sum greater than he tendered to them. Upon the former hypothesis it was clearly competent for the plaintiffs upon a sufficient consideration to release the defendant from one-half of his liability to them. It therefore does not matter whether or not Daulgren ever consented to the agreement which defendant said was subsequently entered into between him and the plaintiffs or whether or not Daulgren ever agreed after the well had been drilled to 900 feet to pay plaintiffs $400 for the drilling bill. Plaintiffs agreed to look to him for that sum and to release the defendant from that amount of liability.

The only question necessary to determine in this case is whether the evidence of the

defendant discloses a sufficient consideration for such release by the plaintiffs. We think it does. When plaintiffs had drilled to the shallow sand and work was stopped and the well declared to be a dry hole the defendant was under no obligation to employ them any further. He, however, proposed to them that, if they would release him to the extent of $400 and look alone to Daulgren for that amount, he would employ them to drill further, and obligated himself to pay for such drilling at the rate of 90 cents a foot. It is argued by counsel for plaintiffs that the 90 cents a foot agreed to be paid by the defendant for the additional drilling was a consideration for such drilling alone, and that the additional drilling was the consideration for defendant's promise to pay, and therefore there remained no consideration for the promise of plaintiffs to release defendant to the extent of $400. We are unable to see the force of this reasoning. The plaintiffs were under no obligation to drill further upon the terms proposed by defendant and whether the price agreed to be paid by defendant for such drilling was profitable to the plaintiffs or not is entirely immaterial; the plaintiffs were at liberty to either accept or reject the proposal made by the defendant, and they were bound to accept it or reject it in all of its terms. They saw fit to accept the proposition made by the defendant, which embraced not only the additional drilling, but also the release of defendant from the payment of $400. The promise of defendant to pay for the additional drilling was sufficient consideration for the entire contract. Section 926, Rev. Laws 1910, defines consideration as:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

The promise made by the defendant is clearly a good consideration within the terms of said section. The plaintiffs received the benefit of doing the additional drilling, to which they were not lawfully entitled, and the defendant agreed to suffer the prejudice of paying therefor, which he was not lawfully bound to suffer at the time of making the promise. We therefore conclude that the agreement entered into between plaintiffs and defendant for the additional drilling and for the release of defendant for the payment of the sum of $400 was supported by a sufficient consideration.

This case having been determined upon a demurrer to the evidence of the defendant and upon a directed verdict, all facts and inferences in conflict with the evidence of the defendant must be eliminated entirely from consideration and entirely disregarded. In determining whether or not the trial court erred in directing a verdict we must consider only the evidence of the defendant and the inferences and conclusions to be drawn therefrom. Moore v. First National Bank, 30 Okla. 623, 121 Pac. 626, and cases there cited. We think that the evidence of the defendant, so considered, left a question to be determined by the jury. The trial court therefore erred in sustaining a demurrer to the evidence offered by defendant and in directing a verdict for plaintiffs.

The judgment of the trial court should therefore be reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.