## WALDREP v. EXCHANGE STATE BANK OF KEIFER.

No. 9798—Opinion Filed Feb. 8. 1921.

Rehearing Denied April 26, 1921.

(Syllabus.)

1. **Fraudulent Conveyances—Mortgage of Stock of Goods—Bulk Sales Law.**

The taking of a chattel mortgage on the stock of merchandise of a merchant by a creditor may be done in a manner and attended with such acts and under such circumstances as to constitute, in fact, a sale and be in fraud of the rights of other creditors, and hence in contravention of the provisions of sections 2903, 2904, and 2905, Rev. Laws 1910, known as the Bulk Sales Law.

2. **Trial—Questions for Court or Jury—Interpretation of Writings—Intent.**

Where a transaction is evidenced entirely in writing, or more than one writing, and a mere question of their interpretation arises, this is a question solely within the province of the court to decide; but if the execution is attended with such circumstances that the real purpose of the transaction, as evidenced by such writing, comes in question, and the proof as to the actual intention rests in parol as well as in the writing, it then becomes the province of the jury to determine that real intention, from all the facts and circumstances that are held relevant, competent, and material in proof of the main fact, the admission of which proof is to be controlled by the court in the exercise of a wise and reasonable discretion.

3. **Trial—Demurrer to Evidence—Instructing Verdict.**

When the facts are undisputed and are capable of more than one inference and being such inferences as reasonable men may draw from said facts, and some of which may be favorable to one party and some favorable to the other party to the suit,

then, in that event, a court is not justified in sustaining a demurrer to. the evidence or in giving an instructed verdict, and it is reversible error to do so.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by the Exchange State Bank of Keifer against J. A. Waldrep for conversion. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Shell S. Bassett, for plaintiff in error.

C. H. Chapman and O'Meara, Bush & Moss, for defendant in error.

ELTING, J. This action was brought by the Exchange State Bank of Keifer, Oklahoma, payee and mortgagee, under a note and chattel mortgage given by A. Hamway, a merchant, and secured by his stock of merchandise, etc., against J. A. Waldrep, an attaching creditor, for the conversion of said property and praying judgment for value thereof. The defense interposed by plaintiff in error, J. A. Waldrep, was that Hamway was indebted to defendant for goods sold and delivered; and that the transaction between Hamway and the defendant in error was in fact a sale and in contravention of the Bulk Sales Law, and therefore void as against the attaching creditor, and that said note and mortgage were merely given to conceal the true nature of the transaction between the bank and the merchant, A. Hamway.

The trial court instructed the jury to return a verdict for plaintiff for value of the goods, to which action of the court in so instructing the jury the defendant below and plaintiff in error in this court excepted, and has appealed from the judgment thereunder. The chief contention for reversal is that the trial court erred in directing the jury to return a verdict for the plaintiff, thereby withdrawing from the jury the question of whether or not the transaction between Hamway and the bank, the defendant in error, was a sale or a mortgage.

The evidence discloses that there had been a series of transactions between the defendant in error and Hamway whereby the bank had at various times loaned him money. At about the time the note and mortgage in controversy were executed, the defendant in error discovered that Hamway had also borrowed money from the Central State Bank of Keifer. Upon said discovery, the defendant in error became uneasy about its debt and arranged with the Central State Bank of Keifer to take up the debt of the last named bank, and the total debt of the two banks, amounting to $843.50, was taken over by the defendant in error, the

Exchange State Bank of Keifer, and a note was given by A. Hamway, covering the $843.50, and to secure said note a chattel mortgage was given by Hamway, covering his entire stock of goods located in the town of Watkins, Oklahoma, and also covering some other chattels. That said mortgage was dated March 15, 1916, and that said note and mortgage were by their terms made due and payable one day after date. That on March 16, 1916, and prior to the levy of the attachment by the plaintiff in error, the said mortgage was duly filed in the office of the county clerk of Tulsa county. There does not seem to be any controversy but that A. Hamway was insolvent. That on the same day, and shortly after Hamway executed the note and mortgage, Hamway also executed to the defendant in error a written authority to sell said stock of merchandise, etc., at private or public sale, with or without advertising, which was as follows:

"I, A. Hamway, hereby authorize the Exchange State Bank of Keifer, Oklahoma, to sell my stock of goods, wares, and merchandise, and team of horses and wagon, and harness, at public or private sale with or without advertising, to secure payment of note and chattel mortgage given by me to said bank.

"Witness my hand this 15th day of March, 1916.

"(Signed)  A. Hamway."

On the 16th of March, the day following the execution of the above authority to sell, Hamway executed a written delivery of possession of said stock of merchandise, etc., to the Exchange State Bank; and on the same day the defendant in error, the Exchange State Bank, took charge of said property. On the night of the 16th of March, said stock of merchandise was invoiced and turned over to Frank Shultz, with whom arrangements had been made to purchase said stock. On the morning of the 17th the plaintiff in error, J. A. Waldrep, caused an attachment to be issued by A. M. Engle, a justice of the peace of Jenks, Oklahoma, in a case by the plaintiff in error against A. Hamway, and the constable levied the attachment upon the said stock of goods. That at the time the levy of said attachment was made, Frank Shultz was in possession of said stock of goods under the deal with the bank. That the written authority by A. Hamway made to defendant in error to take possession of said stock of goods, etc., was as follows:

"I, A. Hamway, hereby turn over and deliver to the Exchange State Bank of Keifer, Oklahoma, the possession of my stock of goods, wares, and merchandise, team and wagon and harness, to secure them under its chattel mortgage given by me on March 16, 1916.

"A. Hamway."

That while Shultz was in possession of said goods under the deal with the bank, and on the 17th day of March and after the levy of the attachment on said goods, Shultz went to the defendant in error and notified them that the attachment had been levied upon the goods, and demanded a return of his money. The bank returned Shultz his money. That afterwards said goods were sold under what the defendant in error terms "an attachment or execution" in the justice of the peace case. The plaintiff in error alleges that as soon as Hamway completed his transaction with the bank, he, having been paid $100 by the bank, secretly left town. This charge is not denied. The record does not disclose that Hamway had anything further to do with the transaction.

Sections 2903, 2904, and 2905, Rev. Laws 1910, constituting what is known as the Bulk Sales Law, provide that the transfer of any stock of goods, wares, or merchandise, or any portion thereof, otherwise than in the ordinary course of trade, shall be presumed to be fraudulent and void as against the creditors of such transferror; and that such presumption may be rebutted only by a showing that a notice was given to said creditors as therein provided. No such notice to creditors was given in this case. The last section named above provides that transfers under said article shall include sales. The object of said provisions is to prevent defrauding of creditors by a secret sale in bulk of a merchant's stock of goods. 2 L. R. A. (N. S.) 331, note; Kidd, Dater & Price Co. v. Musselman Grocery Co., 217 U. S. 461, 30 Sup. Ct. 606.

Sections 2903, 2904, and 2905, Rev. Laws, supra, have since been amended to specifically include mortgages and transfers in payment of debt. See Session Laws 1917, chap. 152, page 241. The law, however, of this case is controlled by the unamended provisions, and hence the pertinent question still remains as to whether or not the transaction did in fact constitute a sale, regardless of the fact that it took the form of a chattel mortgage. In Noble v. Ft. Smith Wholesale Grocery Co., 34 Okla. 662, 127 Pac. 14, this court, in discussing this identical question, said:

"A transfer under this act, to be void, must be either by sale, exchange, or assignment. Is a chattel mortgage, such as was given in this case, either a sale, an exchange, or an assignment? If it is, then it comes

clearly within the inhibition of the act, and will be void as to other creditors."

In 11 C. J. 405, 406, it is said:

"A sale is distinguished from a mortgage, in that the former is a transfer of the absolute property in the goods for a price, whereas a mortgage is at most a conditional sale of personal property as security for the payment of a debt or the performance of some other obligation, subject to the condition that on performance title shall revest in the mortgagor. In determining whether a transaction is a sale or a mortgage, the court will take into consideration the intention of the parties in view of all the circumstances, such intention, when ascertained, being controlling, and the form which has been given the instrument evidencing the transaction is of but slight importance. The purpose which it is intended to effectuate is in all cases the final test, and, if the transaction resolves itself into security for a debt or other obligation, it is a chattel mortgage. * * *"

We take the following from Hixon et al. v. Hubbel et al., 4 Okla. 224. 44 Pac. 222, from an opinion by Judge Burford:

"It is further contended that the interest of the mortgagor can only be divested by a foreclosure of the mortgage. We cannot accept this theory. It has frequently been held that after default in the mortgage, the mortgagee may replevin the mortgaged property, and an actual surrender of the property to the mortgagee and delivery of possession divest the title of the mortgagor as completely as an unconditional bill of sale. Of course, where there are creditors of the mortgagor, the courts should and will scrutinize such transaction closely, to prevent collusion or fraud, but these are elements which vitiate all transactions into which they enter, and there is no exception in cases of chattel mortgages.

"It is not contended that the mortgage in question was void for bad faith. The question of the effect of a power of sale in mortgages of merchandise has been much discussed by the courts, and the general rule is that an unconditional power of sale will defeat the mortgage as to creditors of the mortgagor, but, when the power of sale is conditioned that the proceeds shall be applied to the payment of the mortgage debt, the decisions are by no means harmonious. The better reasoning seems to support the rule that such mortgages are not fraudulent per se, but the question is one of fact, to be determined by the court or jury, and, if made in good faith, are valid and may be enforced."

The case of Noble v. Ft. Smith Wholesale Grocery Co., heretofore cited, seems to be the main reliance of the attorneys for the defendant in error; at least, they assert in their brief that an interpretation of the same is favorable to their contention. A reading of the case, however, shows that it does not sustain their contention. In the Noble Case the mortgagor remained in possession of the mortgaged property and no effort was made to take possession by mortgagee or any one else. Nothing was done but to take a regulation chattel mortgage to secure a debt, possession remaining in the mortgagor, and the mortgage was filed and made of record and a suit begun by an unsecured creditor, and a levy of an attachment made on the mortgaged property; the theory of the attaching creditor being that the mortgage was taken in contravention of the Bulk Sales Law, which was at the time unamended and did not embrace mortgages as transactions that would per se contravene its terms.

We hold that there is no analogy, either of fact or principle, between the two cases. See statement of facts in cited case.

The court is of the opinion that this case is hinged upon the following propositions: Was it the real purpose and intention of the parties to said purported mortgage, A. Hamway and the Exchange State Bank of Keifer, defendant in error, that A. Hamway did by said action part with his property rights in and to said property described in said purported mortgage, and that the taking of the chattel mortgage and other instruments with their defeasance provisions was a cloak to hide the real purpose of the parties to the transaction? If that is true, then the plaintiff in error should have recovered. Upon the other hand, if the converse is true, that in fact and in truth the transaction was a chattel mortgage, with a power of sale in the mortgagee to apply the proceeds of the sale to the satisfaction of the debt of A. Hamway to the defendant in error, then, in that event, the defendant in error should have recovered. The whole thing is therefore a question of intention of the parties to the transaction to be arrived at from a consideration of all the facts and circumstances connected with the transaction. The effect of the allegations and contentions of the plaintiff in error is to charge collusion, deceit, or fraud upon the part of Hamway and the defendant in error. In view of the fact that another trial of this cause will be had, and in view of the further fact that the question has been raised in this record as to the latitude to be given in the examination of witnesses on an issue of fraud, we suggest that it is elementary that wide scope is to be given in such examination, controlled by the reasonable discretion of the trial court, having in view the relevancy, competency, and materiality of the evidence sought to be elicited and bearing on the question of the good faith of the transaction.

We deem the intention of the parties in the transaction in this case to be a question

for the jury to determine. It might be said, and in fact is intimated in the brief of the attorney for the defendant in error, that since the mortgage and authority to sell and the contract of delivery of possession of the property were in writing, the case rests upon an interpretation of said contracts, and hence is for the court. This is probably true if the entire question were interpretation of an expressed contract in writing, but under the state of this record the issue puts in question the good faith of the transaction, the charge being that the written expression of the contract does not express the true intention of the parties and was only employed to hide the real purpose—a sale in fraud of the creditors. Under this state of the record, the proof of the real transaction does not lie entirely in the writing, but in parol proofs as well. See Thompson on Trials, vol. 1, sec. 1171, and vol. 2, sec. 1333. The distinction is so clearly stated in the last citation that we will quote the same in full:

"Intent is always a question for the jury, except where it is to be gathered from the terms of an unambiguous writing, and then, upon principles already explained, it is a mere matter of interpretation to be performed by the court. This principle has been much illustrated in what has preceded and will be much further illustrated in chapters in this title which are to follow. Some illustrative cases will also be given in this chapter. Even where the intent with which an agreement was made or an act was done is to be gathered in part from a writing and in part from an oral speech or extrinsic circumstances, the well expressed conclusion is: 'When the intention of the writer is to be judged by the writing, it is a question for the court. But when the meaning is to be judged of by extrinsic facts, or when the writing forms part of a transaction, the rest of which consists of words spoken or acts done; or when, whatever its meaning, it is but a circumstance tending to establish some other fact—it is for the jury to say, whether the language was used in the sense imputed; or what is the character of the entire transaction, of which the writing forms a part; or what is the truth of the ultimate fact which it tends to prove. In these cases the writing must go to the jury to be considered with the other evidence.'"

The evidential facts in this case do not seem to be in dispute, but as to the inferences to be drawn from said facts, reasonable minds may differ. It is well established in this state that even though the testimony is undisputed, it should be so convincing that all reasonable minds must draw the same conclusion from the facts proven, before the court is authorized to sustain a demurrer to the evidence, or direct a verdict.

Reserve Loan Insurance Co. v. Isom, 70 Oklahoma, 173 Pac. 841; Continental Insurance Co. v. Chance, 48 Okla. 324, 150 Pac. 114; City of Durant v. Allen et al., 67 Oklahoma, 158 Pac. 205; Rogers et ux. v. O. K. Bus and Baggage Co., 46 Okla. 289, 148 Pac. 837; Ann. Cas. 1917B, 581.

In Continental Ins. Co. v. Chance, supra, it is held:

"Even though the defendant offers no evidence in rebuttal, where the defendant has denied plaintiff's case and the evidence introduced on the part of the plaintiff is of such a nature that men of ordinary intelligence might draw different conclusions therefrom, it is error for the court to instruct a verdict."

It is only where the evidence and all inferences to be drawn from it will not justify a verdict for one party, that the trial court should give a peremptory instruction to find for the other. Oklahoma Automobile Co. v. Goulding, 73 Oklahoma, 176 Pac. 400; Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016; Harris v. M., K. & T. Ry. Co., 24 Okla. 341, 103 Pac. 758. The rule as to the weight of the evidence governing trial courts in the matter of directing a verdict is fully set out in the first paragraph of the syllabus in the case of Cooper v. Flesner, supra, as follows:

"The question presented to a trial court on a motion to direct a verdict, or which presents itself in the consideration of such action on its own motion, is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting and the court is asked or on it own motion considers the direction of a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving solely the evidence for consideration, which is favorable to the party against whom such action is leveled."

We do not deem it necessary for us to go fully into a discussion of the facts of this case and the inferences that might be drawn from them. The circumstances of the transactions are set forth in the statement of facts. The evidence of the cashier of the bank, Q. V. Johnson, is set forth in the record. He testified as to the transaction with Hamway, and also the transaction with Shultz. There was a witness by the name of Joe Zammer. He testified that Shultz

came to him and asked him if he knew of any stock for sale, and that Johnson had told him he had a stock for sale; that these communications were before the sale of the stock to Shultz. It appears, furthermore, in the record that Hamway, before his departure to parts unknown and after the transaction with the bank, received a cash consideration of $100.

These facts, taken in connection with the invoicing of the goods and the immediate delivery of the goods to Shultz, and the pay-. ment of $300 by Shultz to the bank on the purchase price of the goods, considered with the haste of the transaction and the fact that the note was made payable one day after date, make such a state of facts, together with the inferences that might reasonably be drawn therefrom, that if they had been submitted to the jury and the jury had found in favor of the plaintiff in error and that there was an actual sale, there would have been sufficient evidence to uphold the verdict.

There is another question raised by the attorneys for the defendant in error in their brief, and that is touching the right of the plaintiff in error to maintain the suit, for the reason that he acquired no title by reason of the attachment in the justice's court. The record is not clear as to just what was done in the justice's court. We do not think that there is any necessity for this court, under the state of the record, to pass on the question as to whether the plaintiff in error did or did not procure a title to the property under the attachment proceeding; neither is it incumbent on us to say upon whom the burden lay as to showing the regularity of that proceeding. In the case of Liscum v. Henderson-Sturgis Piano Co., 44 Okla. 549, 145 Pac. 773, the following is stated:

"Where a judgment of a justice's court appears to have been regularly obtained, and where it appears from the transcript of the justice's docket that such justice had jurisdiction over the persons and subject-matter in controversy, such judgment, not appealed from is final and constitutes a bar to a subsequent action over the same subject-matter by the same parties."

See Embry v. Midland Land Co., 50 Okla. 616, 151 Pac. 218; Rumsey v. Howe, 50 Okla. 326, 150 Pac. 1060.

Since another trial of this cause is to be had, ' this question can be thrashed out therein.

After consideration of the entire record, briefs of counsel, and abstract of the evidence in this case, the conclusion is reached that, under the condition of the proof, the question of whether or not the transaction between Hamway and the Exchange State Bank of Keifer was a sale and transfer of Hamway's property to the bank, or a mortgage made in good faith to secure Hamway's indebtedness to the bank, should have been submitted to the jury to determine, and that the trial court, therefore, erred in directing a verdict for said bank and thereby withdrawing such question from the jury. The judgment in this case is reversed, and the cause remanded for new trial, with directions.

HARRISON, C. J., and PITCHFORD, JOHNSON, MILLER, and NICHOLSON, JJ., concur; McNEILL, J., disqualified.