## TEMPLEMAN et al. v. WILSON MOTOR CO.

No. 25121.    April 16, 1935.

S. S. Lawrence and Gibson, Maxey & Holleman, for plaintiffs in error.

E. D. Brewer, for defendant in error.

PER CURIAM. Wilson Motor Company brought suit in replevin for the possession of a Pierce Arrow sedan, or in lieu thereof its value stated to be $535, and for $250 damages for wrongful detention. The defendants, Lena P. Templeman and W. E. Templeman, gave a redelivery bond and secured the return of the automobile. The parties will be referred to as they appeared in the court below.

Plaintiff alleged that, on or about February 5, 1930, the defendants executed and delivered to it their certain combination note and chattel mortgage whereby they agreed to pay to plaintiff a total of $467.91; that they paid $50 thereon, and then made default of the balance of $417.91, with interest and attorney fees.

For answer, defendants filed a general denial, admitted the execution of the note, but alleged that it was executed as a balance due on the purchase price of the Pierce Arrow sedan; that on June 22, 1926 (nearly four years before the date of the note sued on), they purchased said automobile and made payments therefor on an agreement

that plaintiff would sell it to them at the **current price** on date of delivery; that on December 2, 1926, said car was delivered to them and plaintiff represented the current price to be $4,142.11 when in fact it was $3,400; that there was thus misrepresentation; that plaintiff knew the facts, but defendants did not know the facts as to the current price, did not discuss them at that time, but relied upon the statements made, executed the notes presented, and did not know the facts until about the time this suit was filed in September, 1930; that the note sued on was a renewal of the original note given at the time of the delivery of the car and that the indebtedness had in fact been overpaid, and that the note sued on was without consideration.

Plaintiff's petition contains two principal allegations:

(1) The execution of the note for $467.91 dated February 5, 1930, payable over a period of nine months at the rate of $50 per month, except the last payment of $67.91;

(2) The chattel mortgage securing such note dated September 5, 1930, in the usual terms, described that it is given to secure payment of the balance due on "one used Pierce Arrow 5-passenger sedan, model No. 80", and other description.

The defendants answered alleging misrepresentation as to the current price at the date of delivery, and claim failure of consideration on the note sued on.

Defendants assumed the burden of proof. At the close of the evidence, the trial court sustained a demurrer to the defendants' evidence. Plaintiff offered proof as to the value of the car, $500. Defendants requested that the issues be submitted to the jury, which request was refused and the court directed a verdict for the plaintiff for return of the car, or, in lieu thereof, its value fixed at $500. Defendants saved all necessary exceptions and bring this appeal. There was no material dispute as to the execution of the notes or the payments made thereon. The motion for new trial sets forth all necessary objections, particularly the error of the trial court in sustaining the demurrer to the evidence of defendants, in failing to submit the case to the jury, and in directing a verdict for the plaintiff.

The primary complaint presented in the brief of plaintiffs in error is the action of the court in refusing to submit the issue to the jury and in directing a verdict for the plaintiff. The question is, Was such action proper?

## Matters of Proof

Gordon Miller was the first witness called for defendant. He stated that he was a salesman for Wilson Motor Company in 1927; that he sold a Pierce Arrow sedan to one Greer May 13, 1927, at a price of $100 more than the car sold to the Templemans. He was shown an invoice of this car sold to Mr. Greer f. o. b. Tulsa, which he said included freight $140 or $145; that the entire purchase price of the car sold to Mr. Greer was $2,829.50; that other items thereon were extras, and that the Greer sale was for cash. On cross-examination, he stated that the two transactions were separate in time, one December 1, 1926, and the other in May, 1927. The statement was also made that the Greer car sold for $4,045 and the Templeman car for $3,935. This witness testified concerning the advertisement of Wilson Motor Company in the Tulsa World dated November 14, 1926, showing the Pierce Arrow car with the price in large figures $3,350 at Buffalo. A photostatic copy of this advertisement appears in the record at page 75. (This date was only a few days prior to December 2, 1926, the date the Pierce Arrow in question was delivered to the buyers.) The witness pointed out additional prices given in the advertisement, showing that a 7-passenger four-door was priced at $3,350 f.o.b. Buffalo, war excise tax additional, terms if desired.

The defendant W. E. Templeman testified to his long acquaintance with Mr. Wilson, that Mr. Wilson allowed him $825 for his two Buick cars, that they closed the deal on that basis, and Mr. Wilson gave him a credit memorandum, or receipt for the $825; that he was to have terms on the balance at 8 per cent. interest; that this transaction was consummated June 22, 1926. Defendants' exhibit 3 describing the Pierce Arrow series 80, enclosed drive, 7-passenger coach, "price of complete car current at date of delivery", was received in evidence. Defendant stated that about six months later, on December 2, 1926, the Pierce Arrow was delivered to him and he paid $1,000 thereon and executed further papers. He described a payment of $400 made on March 2, 1927, and later payments made through the bank. He stated that there was one note for $1,200, a second note for $1,117.11, the down payment of $1,000, which with the credit allowance for his two Buicks made a total of $4,142.50. He testified that he had known Mr. Wilson for about 20 years; that at the time the car was delivered to him and he made his down payment, he did **not**

ask about the current price, but supposed he was getting the car at the current price and signed the papers and continued to make payments until about December, 1931, on which date he made his last payment of $50.12; that about December, 1931, he commenced to investigate the current price and learned that the excise tax was $80.40, freight $129.50, the price f.o.b. Buffalo $3,-350 (evidently without the extras later described). He identified the newspaper advertisement which showed the price of the car which he purchased was $3,450. He described the extras which he bought and said that, in adding these to the list price, he should have paid $3,729.50, whereas he had paid a total of $4,075.89. In this, he figured the interest item of $176.

Defendant stated that in answer to his telegram asking for delivered price on this car on the date of its delivery, December 2, 1926, he received a telegram from the Pierce Arrow Manufacturing Company, Buffalo, dated June 14, 1932, advising that the list price was $3,350 plus accessories, freight and handling, and excise tax (Exhibits 10, 11, 12, R. 99-102). He stated that he never did receive an itemized statement or invoice of the car purchased. He also referred to a letter from the Pierce Arrow Motor Car Company at Buffalo giving the price on the particular car he purchased. This letter is defendants' exhibit 11, R. 100.

The above is substantially the testimony of the defendant W. E. Templeman and of the witness Gordon Miller who sold the car. Mrs. Templeman did not testify.

After the demurrer was interposed to this evidence and before the court had ruled thereon, the defendant asked permission to put W. E. Templeman back on the stand to show more fully that he did not at the time of the delivery of the car receive an itemized statement, and to testify further as to his reliance upon the representations made in connection with the current price. This offer was refused and exceptions saved.

Plaintiff in error presented his argument under two principal headings:

(1) That the court abused his discretion in refusing to permit the defendant to reopen and to present additional evidence in connection with the ignorance of the defendants about current prices;

(2) That the court erred in sustaining the demurrer to the evidence.

We cannot see that there is error in the ruling of the court on the first contention. The evidence proposed to be offered concerned a matter on which the witness had testified, and the additional evidence could have been only cumulative. The exclusion of such evidence was within the discretion of the trial court.

On the second point, we cannot believe that the court was justified in taking the case from the jury and directing a verdict for plaintiff. A demurrer admits the truth of the evidence offered, together with all reasonable inferences that follow from the facts shown. We think the evidence, while not sufficient to show a prima facie case of actual fraud, under the liberal interpretations given to section 9418, O. S. 1931, was sufficient to constitute some evidence of constructive fraud, and some evidence of failure of consideration for the note sued on. The testimony introduced was such that reasonable men might differ in their conclusions thereon.

"Peremptory instruction should only be given where all reasonable minds would draw the same conclusion." Sartain v. Walker, 60 Okla. 258, 159 P. 1096.

Where conflicting inferences could be drawn from the evidence, the case is for the jury. Haddock v. Sticelber & Mong, 65 Okla. 254, 165 P. 1138.

"When the facts are undisputed and are capable of more than one inference and being such inferences as reasonable men may draw from said facts, and some of which may be favorable to one party and some favorable to the other party to the suit, then in that event a court is not justified in sustaining a demurrer to the evidence or in giving an instructed verdict." Waldrep v. Exchange State Bank of Kiefer, 81 Okla. 162, 197 P. 509.

To the same effect, see Keaton v. Taylor, 114 Okla. 167, 245 P. 56. It appears to us that failure of consideration may properly be shown by oral proof, and, when shown will constitute a defense to such an action. Holland Banking Co. v. Dicks, 67 Okla. 228, 170 P. 253; Frederick v. Ludwig, 112 Okla. 217, 240 P. 1049; City Natl. Bank v. Mason (Iowa) 165 N. W. 103; Graham Oil & Gas Co. v. Oil Wells Supply Co., 128 Okla. 201, 264 P. 591.

In reaching this conclusion, we have considered the several points presented in the brief of defendant in error under six certain propositions, as follows:

(1) The evidence does not show that Lena Templeman, who executed the car

order and sales contract, failed to understand all portions thereof;

(2) The evidence does not show that any misrepresentation was made by the plaintiff;

(3) Failure of consideration does not enter into the transaction;

(4) It is the contention of plaintiff that this car order was not a contract for purchase of an automobile;

(5) The court committed no error in refusing to allow defendant to reopen his case;

(6) Defendant failed to establish any set-off or counterclaim.

Answering the first proposition it may be said that the two defendants are jointly charged upon a note that had its foundation in the sale of this car, and it is apparent that the defendant W. E. Templeman was the principal party with whom the dealings were made. His name is on the note and the mortgage, and the word "by" therein included may, or may not, be a part of the printed form. It seems to us he is a proper party to appear and defend against the contract.

On the second proposition, it appears that the documents executed by the plaintiff, the memorandum of sale that was read to the jury, contain a written promise to sell the car at "price of complete car at date of delivery," and this, it seems, was plainly interpreted by both parties to mean "current price" at date of delivery. This memorandum was dated June 22, 1926. In contrast to this promise, the defendant has produced some material proof tending to show the current price at date of delivery was substantially less than $4,142.11. The truth of this evidence with the inferences reasonably deducible therefrom is admitted by the demurrer. If these statements of the defendant Templeman are correct, there is some evidence of constructive fraud and failure of consideration, either of which may when properly established relieve him from liability on the contract. We do not say that the evidence shows misrepresentation. We say that it shows facts on which a jury might reach such a conclusion. Cases are cited to show that representations made to a person able to read, that a writing embodies a previous agreement, is not a fraud. We may admit that rule, but we are unable to say that, from the present evidence, it fully applies in this case. It cannot be said that there was mistake or misrepresentation about the contract itself; that was reasonably clear. Getting to the meat of the contract, the seller contracted to sell and deliver this car at "current prices". What constituted such prices was particularly within the knowledge of the seller. The seller designated the amounts in the contract, and it should have done so correctly. Perhaps it has done this and may be able to prove that fact. The defendant thinks otherwise and has presented some evidence in support of that contention. Numerous cases hold that failure of consideration and misrepresentation may be shown by parol testimony.

As to the third point, it is argued that the car order dated in June, 1926, was purely preliminary, that the contract did not become a contract until December 2, 1926, when delivery was made, the equipment chosen and the price inserted; that when this was done there was no failure of consideration, but that the consideration stated in the sale contract was fully supplied. The defendant has presented some testimony in support of that claim. If that is incorrect, plaintiff should be able to disprove it without difficulty.

In respect to proposition 4, attorney for plaintiff contends that the order executed June 22, 1926, is not a contract, but is indefinite as to time and price, and, whatever it was, it was superseded by the sales contract of December 2, 1926, and cites cases to support this contention. We have examined these cases and do not see that they apply. In Brown v. Coppadge, 54 Okla. 88, 153 P. 817, the court considered a series of contracts made with relation to certain lands near Oklahoma City. Each contract related to the preceding one and contract No. 3 was held to have superseded the previous contracts. The case does not present any novel rule. The case does not prevent nor forbid the consideration of previous contracts; rather, it shows that the previous contracts were fully considered, and, because of their content, they conflicted with the later ones and the latter should control. The order or memorandum of June 22, 1926, may properly be said to be incomplete, but it is not in conflict with the subsequent sale order, and the latter was executed in fulfillment of the former. The cardinal rule is to ascertain the intent of the parties by developing all the facts, and we do not think the defendant should be refused permission to place his evidence before the jury.

In Mullen v. Thaxton, 24 Okla. 643, 104 P. 359, the court held that a contract may be superseded by a new contract with the effect of rescinding it, in which case the lat-

ter controls. The issues were submitted to a jury, and the court pointed out that the answer was sufficient to show an abandonment of the original contract. The case does not hold that proof of the entire transaction may not be introduced.

Smith-Wogan Hdw. Co. v. Moon Buggy Co., 26 Okla. 161, 108 P. 1103, is also cited. This case held that, after a written contract, the parties may vary or abrogate it at any time on fresh consideration, and it was held error on the part of the trial court to sustain a demurrer to an answer setting up such agreement.

In Choctaw Lumber Co. v. Walldock, 78 Okla. 232, 190 P. 866, also cited, the defendant was sued on a promissory note and was allowed to set up defenses in the form of additional agreements and to go to the jury thereon, and judgment for the defendant was affirmed.

We believe the fifth point, that there was no error in refusing defendant permission to reopen his case, is well taken.

Under the sixth and last proposition, counsel considers "current prices" and produces substantial argument tending to show the defects in defendants' proof. This argument is forcibly arranged and has received careful consideration, but it seems to us that defendant, by his own evidence and the testimony of Gordon Miller, has described various details supported by telegrams and letters from the home office of Pierce Arrow Motor Company and other proof sufficient to go to the jury on the defenses set out in his answer.

On the facts in this case, it may be asserted that the theory that an estoppel, where one gives a renewal note after knowledge of the facts as stated in Tudor v. American Inv. Co. of Enid, 163 Okla. 274, 21 P. (2d) 1056, applies to prevent the defenses set out by the defendants herein. If so, it occurs to us that it would be essential that the plaintiff should expressly plead estoppel, and that was not done by the plaintiff in this case.

The judgment of the court below is reversed and the case remanded for new trial.

The Supreme Court acknowledges the aid of Attorneys Geo. G. Barnes, Oliver C. Black, and Richard A. Billups in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Barnes and approved by Mr. Black and Mr. Billups, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.