Grace N. JACKMAN, Appellee,

v.

OKLAHOMA TAX COMMISSION,
Appellant.

No. 43908.

Supreme Court of Oklahoma.

May 16, 1972.

James M. Sturdivant, Richard D. Jones, for Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for appellee.

Albert D. Lynn, E. J. Armstrong, Mike Tapp, E. B. Lee, Oklahoma City, for appellant.

DAVISON, Vice Chief Justice.

This appeal presents a controversy between Grace N. Jackman (Taxpayer) and Oklahoma Tax Commission (The Commission) over the value of the estate of Taxpayer's deceased husband, George Albert Jackman (Bert Jackman) that is subject to an estate tax under applicable Oklahoma law. Our decision on appeal depends upon whether the necessarily implied finding of the jury that Taxpayer and her deceased husband were equal partners in the ownership and operation of a drug store, can be sustained.

The Taxpayer, as executrix (she was also sole legatee and devisee) of her husband's will, filed an estate tax return with The Commission, May 9, 1968, stating the value of the gross estate to be $38,621.19 and a total estate tax liability of $185.90. The Commission conducted a field audit and as a result thereof concluded that the gross value of decedent's estate was $73,230.76. Accordingly an additional tax of $984.84 was assessed on October 25, 1968. Through its field audit, The Commission had found that the decedent held

in joint tenancy with Taxpayer, realty of the value of $15,500.00 and personalty valued at $49,740.76. Taxpayer claimed that the realty and personalty were acquired with profits from a drug store business in which she was a half interest partner with the deceased. By its order of January 21, 1969, The Commission rejected Taxpayer's claim.

In due time Taxpayer paid the additional tax under protest and commenced this action against The Commission in the District Court of Oklahoma County, Oklahoma, for the recovery of the amount paid under protest. No question is raised concerning the adequacy of Taxpayer's petition which asserted as a basis for recovery of the tax paid under protest, that the properties held by Taxpayer and deceased in joint tenancy were acquired with the profits from a drug store business in which she was a half interest partner with deceased.

At a jury trial, Taxpayer and The Commission both introduced evidence in intended proof of their respective positions. Under appropriate instructions to the jury, which neither party challenged, the jury was requested to find whether the Taxpayer and her deceased husband were full partners in the operation of the drug store, and in the ownership of their property, real and personal, at the time of his death and prior thereto. The jury, by finding for the plaintiff and assessing her recovery at $984.84, found, by clear implication, that Taxpayer and her deceased husband were full partners in the operation of the drug store and in the ownership of their property.

As grounds for reversal and for a judgment reinstating the order assessing additional tax, The Commission says (1) its timely objection to the submission of this case to a jury should have been sustained because the facts of this case are not in dispute, thus, making the existence of a partnership a question of law for the trial court, (2) the trial court should have sustained The Commission's demurrer to Taxpayer's evidence and its motion for a directed verdict.

The Taxpayer says (1) where reasonable men may draw different inferences from undisputed evidence, the inferences are to be drawn by the jury; (2) where the jury findings are supported by evidence such findings cannot be disturbed on appeal.

To decide the issues thus presented, we may rely upon The Commission's statement of facts and the Taxpayer's statement of facts. The Commission does not challenge the Taxpayer's statement and the Taxpayer's challenge consists of a statement of additional facts.

Taxpayer's husband and one Alfrey established the A & J Drug Store of Tulsa, Oklahoma, in 1926, prior to the marriage of Taxpayer and decedent in 1927. Alfrey left the business in January 1927. Taxpayer quit her job as a school teacher to start working full time with her husband in the drug store. Since 1928 Taxpayer worked full time in the drug store until it was closed in 1967, three months after the death of Taxpayer's husband. Taxpayer's husband worked full time in the drug store from 1928 to 1967, except for a two year period during World War II when he was in the army for 6 months, then worked for the Douglas Aircraft for 18 months. During the two year period, Taxpayer operated the drug store alone. Both Taxpayer and her deceased husband were authorized to sign checks and purchase orders. Taxpayer wrote most of the checks. Taxpayer was the general sales clerk and bookkeeper and her deceased husband was the pharmacist. Taxpayer operated the cash register and soda fountain and did anything that needed to be done in the front end of the drug store. From time to time Taxpayer and her husband each signed documents on behalf of A & J Drug Store.

A copy of the insurer's cancellation notice on a fire insurance policy dated December 11, 1967, covering the contents of the drug store, reflected that the policy was carried in the joint name of Taxpayer and her deceased husband. The 1965, 1966

and 1967 personal property tax statements of assets, filed on the drug store property, listed the owners as Taxpayer and her deceased husband. Neither Taxpayer nor her husband ever received a salary for their work in the drug store during the 40 years they operated it. The drug store building was rented.

The real and personal property held in joint tenancy by Taxpayer and her deceased husband was acquired and paid for by the profits from the operation of the A & J Drug Store. The initial investment in the business was made on borrowed money which indebtedness was retired for the most part after Taxpayer and Bert Jackman became operators of the drug store.

The basis of The Commission's defense is (1) certain evidence to the effect that an undated application for a sales tax permit made on behalf of the A & J Drug Store was signed by Bert Jackman owner and upon a line in the application requesting information as to whether the business was a corporation, partnership or individual proprietorship, the applicant answered "individual proprietorship;" (2) evidence to the effect that applications for cigarette dealer's licenses for the years 1963 to 1968 inclusive, were made in the name of Bert Jackman d/b/a A & J Drug Store and signed "Bert Jackman" owner; (3) Taxpayer and her husband Bert Jackman, filed joint income tax returns but did not file partnership returns.

On the basis of Whitney v. Harris, 169 Okl. 288, 36 P.2d 872, and Shackleton v. Commercial Lumber Co., 182 Okl. 211, 77 P.2d 60, The Commission urges that since the facts are not in dispute the existence of a partnership is a question of law for the court. But in the cited cases, reasonable men could not have drawn different inferences from the undisputed testimony. In Shackleton we recognized that "The only reasonable inference deducible from the evidence is that, as between the two of them, the lumber company was merely in the position of guarantor to the defendant and was to furnish defendant the lumber or materials with which defendant built the house."

However, if on the facts, though undisputed, reasonable men could draw different inferences, it is the jury's function to determine which inferences should be drawn. Waldrep v. Exchange State Bank, 81 Okl. 162, 197 P. 509. On this issue we said: "The evidential facts in this case do not seem to be in dispute, but as to the inferences to be drawn from said facts reasonable minds may differ. It is well established in this state that, even though the testimony is undisputed, it should be so convincing that all reasonable minds must draw the same conclusion from the facts proven, before the court is authorized to sustain a demurrer to the evidence, or direct a verdict." See also Gwinn v. Payne, Okl., 477 P.2d 680; Dunham v. Jackson, Okl., 349 P.2d 737; Hudson v. Blanchard, Okl., 294 P.2d 554.

We next consider whether under the undisputed facts reasonable minds could draw different inferences as to whether a partnership existed between Taxpayer and her deceased husband in the ownership and operation of the A & J Drug Store of 2012 East 6th Street, Tulsa, Oklahoma.

54 O.S. 1961, § 207, prescribes the rules that shall apply in determining whether a partnership exists. The Commission in its brief cites § 207(2) and (3), to which we shall make later reference, but entirely omits to cite § 207(4) which seems to us to have relevance because Taxpayer and her deceased husband each received a share of the profits by investing the profits in real and personal property which they held in joint tenancy. See Shackleton v. Sherard, Okl., 385 P.2d 898 and 60 O.S. 1961, § 74. Section 207(4) says: "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) As a debt by installments or otherwise,

(b) As wages of an employee or rent to a landlord,

(c) As an annuity to a widow or representative of a deceased partner,

(d) As interest on a loan, though the amount of payment vary with the profits of the business,

(e) As consideration for the sale of a good-will of a business or other property by installments or otherwise."

Not one fact disclosed in the record excludes the prima facie presumption that Taxpayer and her deceased husband were partners. Sec. 207(2) cited in The Commission's brief which says: "Joint Tenancy * * * does not of itself establish a partnership whether such co-owners do or do not share any profits made by the use of *the property*" (emphasis supplied) does not rebut the prima facie presumption created by § 207(4). Sec. 207(3) cited in The Commission's brief which says: "The sharing of gross returns does not of itself establish a partnership whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived," does not rebut the prima facie presumption created by § 207(4). We know that the "gross returns" of § 207(3) are not the "profits" of § 207(4). The expression "does not of itself establish a partnership" appearing in § 207(2) and (3) operate to support the prima facie presumption created by § 207(4). In the context of this record neither the "joint tenancy" of § 207(2) nor the "gross returns" of § 207(3) stand alone.

On the basis of the foregoing, with emphasis upon the sharing of the profits, we conclude that this is the typical case in which the facts though undisputed will support different inferences drawn by reasonable minds. These inferences are for the jury to draw. Waldrep, supra. Accordingly, there is no ground for disturbing the verdict of the jury, supported as it is by the evidence. Vallier v. Fosburg, Okl., 365 P.2d 160.

Affirmed.

All Justices concur.