# The Chicago City Railway Company

## v.

## William Blanchard.

*Master and Servant—Street Railway Company—Recovery of Wages — Contract of Servic — Conditions — Deposit — Forfeiture — Evidence — Instructions.*

1. Contracts will not be so construed as to compel the proof of a negative unless that appears to be the express intention of the parties thereto.

2. In order to justify the retention of the deposit of an employe upon his discharge, the contract of service providing for such retention in certain cases, it must be shown that a contingency arose which warranted such action.

3. Clauses in contracts of service in the nature of forfeitures must be strictly construed.

4. Where the right to recover a deposit depends upon the exercise of the judgment of a given person, the forfeiture thereof under such clause will not be permitted unless it be shown that there was an exercise of such judgment in good faith, and in a reasonable, and not in an arbitrary or capricious manner.

5. In an action brought by a discharged employe of a street railroad company to recover the amount of a deposit made by him upon entering the employment of such company and certain wages alleged to be due, this court holds that the terms of the written contract under which the plaintiff was first employed was in no way changed or modified by a subsequent parol agreement to accept less wages if allowed to continue in such employment; that the contract first entered into controlled plaintiff's right of recovery upon his final discharge, and that in the absence of evidence warranting the retention of the sums in question, the judgment for the plaintiff must be affirmed.

[Opinion filed March 10, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. JULIUS S. GRINNELL, Judge, presiding.

Appellee was a grip driver, and went into the employment of the appellant company under the following contract:

" This agreement witnesseth, that Wm. Blanchard, the party of the first part, having made application to the Chicago City Railroad Company, party of the second part, to be employed as *driver* upon its cars, and in consideration of such employment, having this day paid to the party of the second part the sum of fifty dollars, the receipt of which is hereby acknowledged, said party of the second part has agreed to employ him as such driver, and to continue him in its employment during its pleasure and no longer, and to pay him on its regular pay day for his services as such driver the compensation which it shall agree upon, the same being so much per day or so much per trip according to the time when the same shall be run, and to be fixed from time to time by notices posted in the offices of its different lines; but the party of the first part, whether paid by the day or the trip, shall not be entitled to pay except for the time he shall be actually engaged in running a car.

" The party of the first part promises and agrees well, honestly and faithfully to perform the duties of a driver for the said Chicago City Railway Company so long as he shall be continued in that employment, and to obey and fully comply with all rules and regulations now existing, as well as those which may from time to time be prescribed by the company for the drivers on its cars.

" The party of the first part further agrees that if, for any reason, he shall be suspended from the employment of said company, he shall not be entitled to any compensation during such suspension; and he further agrees that when his employment with said company ceases he will at once return to said company any badge or other property of said company in his possession, and that he will pay to said company during the time he shall retain possession of any such badge or other property of said company after he has been discharged or suspended from its employ, or his employment in any way shall cease, the sum of twenty-five (25) cents for each day that the same, or any of them, are so retained by him, not as a penalty but as liquidated damages; and he further agrees that any wages due him from the party of the second part, when his employment under this contract shall terminate, shall be retained by said party of the second part until all of said property is by him delivered to said company.

" And the said party of the first part further agrees to pay to said company any damage either to person or property, which the said company shall sustain directly or indirectly by reason of his carelessness, neglect, or misconduct during the time he shall remain in the employ of the said company, and any wages which may be due to the party of the first part at the time of such act or neglect, so causing such damage, shall be applied by the party of the second part, so far as shall be necessary in payment thereof, and said wages may be retained by said company until any claims for damages shall be determined or adjusted, and upon the termination of said employment, either by the resignation by said party of the first part of his said employment or upon his discharge by the party of the second part, if, in the judgment of the superin-

tendent of said company, said party of the first part during his employment as said driver, has not been guilty of any neglect, carelessness, dishonesty, misconduct, unfaithfulness, incompetency or dereliction of duty of any kind, on his part, in his said employment or duty of driver, and the company shall have suffered no loss or damage by reason of any act or neglect of said driver, and he shall have returned to the party of the second part all badges or other property intrusted by said company to him, then, and in such case, the said company agrees to pay to said party of the first part, on his written application therefor, and on his giving his receipt to the party of the second part, in full of all demands to such date, the sum of fifty dollars.

" In witness whereof, said party of the first part hath hereunto subscribed his name and the said Chicago City Railway Company have caused these presents to be subscribed by their superintendent, this twenty-second day of December, one thousand eight hundred and eighty-five.

" WILLIAM BLANCHARD.    [SEAL.]<br>
" C. B. HOLMES, Supt.    [SEAL.]

" Signed and delivered in the presence of :

    " H. H. WINSOR, Secretary."

The action was brought to recover the $50 deposited, and some wages which were due him. The judgment in his favor was for $99.44. Other facts sufficiently appear in the opinion.

Mr. C. M. HARDY, for appellant.

Messrs. WINTERS & COY, for appellee.

MORAN, J. It appeared on the trial that after appellee had been at work as driver for some months, under the contract set out in the statement of facts, he was discharged on the ground that a man named Humble had been injured through his carelessness. Appellee denied that he was in any manner careless, or in any way to blame for the alleged accident, and sought to be reinstated in the employ of the company. An

arrangement was made between him and the superintendent of the company by which he was taken back into the service of the company, $10 per month of his wages to go toward the payment of the sum of $175, which it was claimed the company had paid to Humble for his injuries.    He went to work and continued for something over four months, when he was again discharged. From the pay for each of three of said months, the $10 was deducted with his consent, and on the trial the court allowed to the company $10 deduction from the wages of the fourth month.    After his last discharge he went to the superintendent, and was told by him that the company could not use him any more, that in some ways he was a good man, but he thought him a little too careless.    Appellee said : " Very well, can I settle with the company to-day ? " and the superintendent said :  "Yes, you can; you go to the secretary and he will settle with you."    Appellee thereupon went to the secretary and gave up his badge as requested, and signed a paper presented to him for signature, which appears to have been a formal resignation of his employment with the company, and was then told by the secretary to " go to Mr. Pennington for his pay."    He went to Pennington and was told he would have to get an order before he could draw his pay, and then went back to the secretary, who said :   " I do not see that we owe you anything."

On the trial the counsel for appellant contended and requested the court to hold as law, that the terms of the written contract of December 22, 1885, under which appellee was first employed, and which is set out in the statement of facts, was in no way changed or modified by the parol arrangement between appellee and the company, made when he was taken back after his first discharge, and further requested the court to hold that said parol agreement was without consideration, and was void under the statute of frauds, because it was not to be performed within one year from the making thereof, and that either party could reject it, and act as though it had never been made.    The court formally refused to hold the written propositions embodying these contentions, but seems to have acted upon the principle contended for, and held the parol

agreement valid only so far as it had been performed, allow-
ing the company to retain $10 per month from the wages of
appellee for the three months he worked under that under-
standing, treating it as in effect an agreement, on appellee's
part, to work for $10 a month less than the regular wages in
order to retain his employment.

We think this conclusion correct. Appellee's testimony is
clear and is uncontradicted, that he did not admit that he
owed anything to the company when he made the parol agree-
ment, but that he was willing to submit to the deduction of
$10 per month from his wages until the deductions should
amount to $175, in order to retain his employment. We
therefore agree with the contention of appellant that the
rights of the company and the rights of appellee are to be
determined by the written contract of December 22, 1885,
that said contract was in no way modified or affected by what
was done by parol, and that it controlled appellee's rights as
to the deposit and as to his wages at the time of his final dis-
charge.

There is some contention that the $50 deposited became the
property of a third person who advanced the money for appel-
lee, but the position is wholly without support. There was no
assignment of appellee's rights under the contract, and the
third person merely became the creditor of the appellee, and
could not maintain the action for the deposit against the com-
pany. We come, therefore, to consider the rights of the
parties under the written contract. The clause of the contract
which gives the company the right to retain the wages of the
appellee for damages, provides that he shall pay any damage
which the company may sustain " by reason of his careless-
ness, neglect or misconduct during the time he shall remain in
the employ of the company, and any wages which may be
due to the party of the first part, at the time of such act or
neglect so causing such damage, shall be applied    *    *    *
in payment thereof, and said wages may be retained by said
company until any claims for damages shall be determined or
adjusted."

Now, so far as regards the amount of wages due to appellee

it is very clear that there was no circumstance in evidence in this case which would authorize its retention by the company under the terms of that clause. There is no proof whatever that the company had sustained any damages by reason of the carelessness, neglect or misconduct of appellee or that there was any claim pending against the company and undetermined for damages so arising. In order to retain the wages under that clause, the company must prove, when suit is brought for the wages, the very facts required by the agreement, *i. e.*, that it has sustained damages by the neglect or misconduct of appellee. As we have stated, there can be no pretense that such proof was made in this case. The right to recover the $50 deposit is to be next considered.

The clause of the contract relating thereto, provides that on the termination of the employment, if, in the judgment of the superintendent of the said company said party of the first part during his employment as said driver, has not been guilty of any neglect, carelessness, dishonesty, misconduct, unfaithfulness, incompetency or dereliction of duty of any kind on his part in his said employment or duty of driver, and the company shall have suffered no loss or damage by reason of any act or neglect of said driver and he shall have returned to the party of the second part all badges,   *   *   * the said company agrees to pay to said party of the first part   *   *   *   the sum of $50." This clause aims to put it in the power of the superintendent to forfeit the deposit of $50 on the exercise of his judgment, and the rule is well settled, that such terms in contracts are to receive a rigidly strict construction. Before the forfeiture will be permitted under such clause, it should be shown that there was an exercise of the judgment on which the right to recover is made to depend, and that it was exercised in good faith and in a reasonable and not in an arbitrary or capricious manner. Leake on Contracts, 637; Singerly v. Thayer, 108 Penn. St. 291.

The superintendent was invited to exercise this judgment when he was asked by appellee at the time of his final discharge, if he could then settle with the company. If what he then said can be regarded as an exercise of his judgment on

the question at all, it must have been held to have been exercised in favor of appellee, for he directed him to go to the secretary. He could not leave the matter of the forfeiture to the judgment of the secretary. The power could not be delegated. It must be exercised by the one on whose judgment the parties reposed. Therefore the direction to go to the secretary to settle was, fairly construed, a determination that there was to be no forfeiture. But if it be admitted that what occurred is to be construed as a judgment of the superintendent against appellee on the matter left to his determination, yet that does not, in our opinion, furnish a defense to appellant. Before the $50 deposited by appellee could be rightfully retained by appellant, two things must be made to appear : first, it must be the judgment of the superintendent that appellee had been guilty of the neglect or other dereliction of duty mentioned, and second, it must be shown as a matter of fact, that the company had suffered loss or damage by reason of the act or neglect of appellee. It may be said with reference to this last proposition, that the burden was on appellee, because of the form of the clause in the contract, to prove that the company had suffered no loss. We think not. Contracts will not be so construed as to compel the proof of a negative, unless that appears to be the express intention of the parties. It was for the company to prove loss suffered by reason of appellee's neglect, and it made no proper attempt to do so. It necessarily follows that appellee, having demanded his money, was entitled to receive it, unless the appellant proved the existence of facts which, under the terms of the contract, would entitle it to retain it. Having wholly failed to prove such facts, the judgment for the deposit as well as for the balance of wages, was correct, and must be affirmed. The formal error of the court in refusing some of appellant's propositions of law did not affect the result.

*Judgment affirmed.*