DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 10578. Department Two. January 25, 1913.]

ANTON DOLLAR, *Respondent*, v. NORTHWESTERN
IMPROVEMENT COMPANY, *Appellant*.[1]

MASTER AND SERVANT—SAFE PLACE—GAS IN COAL MINE—NEGLI-
GENCE—VIOLATION OF STATUTE—EVIDENCE—SUFFICIENCY. In an ac-
tion by a coal miner for injuries sustained in a gas explosion, plain-
tiff's statement that, if there had been enough air, the gas would
not have accumulated in his working place, is a mere conclusion,
and not sufficient evidence of negligence or of defendant's failure to
comply with Rem. & Bal. Code, § 7381, requiring good ventilation
and sufficient circulating air.

MINES AND MINING—USE OF SAFETY LAMPS IN COAL MINES—STAT-
UTES—CONSTRUCTION. Rem. & Bal. Code, § 7400, providing that only
safety lamps shall be allowed or used in every working place of a
coal mine where there is likely to be an accumulation of explosive
gases or imminent danger therefrom, does not require the use of
safety lamps where there had been no indication of gases until the
instant of the accident, and where there was no evidence that there
was likely to be an accumulation of explosive gases or imminent
danger therefrom.

SAME—USE OF SAFETY LAMPS—EVIDENCE—ADMISSION BY COUNSEL.
In an action for injuries sustained in a gas explosion in a coal
mine, through failure to use safety lamps in working places where
there was likely to be an accumulation of explosive gases, a retort
by counsel during the trial that the mine was a gaseous mine, and
that gas was likely to come quickly in some parts of it, is not an
admission that will avail the plaintiff, in the absence of evidence
that there was likely to be an accumulation of gases at the point in
question.

Ap_ ~al from a judgment of the superior court for King
county, Myers, J., entered May 7, 1912, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for

[1]Reported in 129 Pac. 578.

personal injuries sustained by an employee through an explosion in a coal mine. Reversed.

*C. H. Winders*, for appellant.

*H. M. Ramey, Jr.*, for respondent.

MAIN, J.—This is an action for damages for personal injuries. The respondent is a coal miner. The appellant is the operator of a coal mine at Ravensdale, Washington, known as mine No. 2.

On April 25, 1911, at the hour of about 5:30 o'clock a. m., the respondent, while at work in the mine, was injured by a minor gas explosion. His injury was painful but not permanent, and disabled him from work for a few weeks. The cause was tried before the court and a jury. At the conclusion of the respondent's evidence, the appellant challenged the legal sufficiency of the evidence and moved the court for a directed verdict. This being overruled, the appellant introduced in evidence a diagram of the mine wherein the accident occurred, and rested, and again moved the court for a directed verdict, which motion being overruled, the case was submitted to the jury, and a verdict returned for the respondent in the sum of $550, upon which judgment was entered. Motion for judgment notwithstanding the verdict and a motion for new trial were made and overruled; from which the cause is brought here on appeal.

At the time of the accident, the level in mine No. 2, where the respondent was working, was being developed. There was a gangway driven both north and south from the entry. The development work at the time was in extending the north gangway, driving an airway fifty feet above and parallel with it, and driving chutes connecting the gangway and the airway. This work was being carried on by the men working in three shifts; the first working from seven a. m. to three p. m.; the second from three p. m. to eleven p. m.; and the third from eleven p. m. to seven a. m. Two men on each shift were engaged in extending the gangway, one in ex-

tending the airway, and one the chute.    The situation will be better understood by the examination of a diagram which was introduced in evidence and is set out herein.

The respondent was working in chute 16. Two men were extending the gangway and were at the point indicated by the letter A upon the diagram. One was engaged in extending the airway. There was also a motorman whose duty it was to drive the motor along the gangway. The air passed through the gangway until it reached the last open chute, and then through this chute into the airway, and through the airway out of the mine. The last chute being worked, shown on the diagram as 16, as well as the extension of the gangway beyond the last open chute, was supplied with air by what is known as a "booster" fan, which is set in the gangway and picks up the main volume of air and throws the same into the last chute and to the end of the gangway.

The respondent was the only witness who testified as to the manner of the accident and the method of doing the development work. He went to work on the third shift on the night of April the 24th, and worked in chute 16 from eleven p. m. until about 5:30 a. m., during which time he had driven this chute back approximately six feet. At this time he left the face of the chute where he was working, to go out into the gangway, and returned in from two to four minutes. Immediately upon his return, the explosion which caused the injury occurred. The respondent worked with an open light, as did all the other men employed upon this work. There had been no gas at any time during the working of the three shifts. The air was good, and the first indication of the presence of gas was the explosion itself.

The respondent, in paragraphs 4, 5, and 6 of his complaint, as grounds of negligence on the part of the appellant, alleges, (1) failure to provide a good and sufficient amount of ventilation; (2) that the air was not made to circulate through the shafts, levels, and working places of the mine; (3) failure to inspect on the day of the accident, or if an inspection were made and gas discovered, failure to note that fact on the bulletin board at the mouth of the mine; and

(4) failure to withdraw all workmen from the portion of the mine wherein the accident occurred.

In Rem. & Bal. Code, § 7381, it is provided that:

"The owner, agent or operator of every coal mine, whether operated by shafts, slopes or drifts, shall provide in every coal mine a good and sufficient amount of ventilation for such persons and animals as may be employed therein, the amount of air in circulation to be in no case less than one hundred cubic feet per minute for each man, boy, horse, or mule employed in said mine, and as much more as the inspector may direct, and said air must be made to circulate through the shafts, levels, stables and working places of each mine, and on the traveling roads to and from all such working places."

It will be noticed that this section of the statute requires, (1) that every coal mine shall have a good and sufficient ventilation; (2) the amount of air; and (3) that the air must be made to circulate. A careful reading of the record in this case demonstrates that there is no evidence supporting any of the above allegations of negligence in the complaint, or showing that the section of the statute above referred to had not been complied with, unless the answer of the respondent to a single question propounded to him by his counsel can be construed as evidence of negligence or of the neglect of duty imposed by the statute. On direct examination he testified, in effect, that if there had been enough air, the gas would not have remained in the chute where he was working. This is not evidence of a fact, but is a mere conclusion, and does not even specify the amount of air which the witness would deem sufficient for the purpose. The amount of air necessary cannot be measured by the judgment of the witness, but must be determined by the requirements of the statute. We think this evidence is not sufficient to send the case to the jury upon any of the above allegations of negligence, or upon a failure to comply with the prescribed statutory duty.

Paragraph 7 of the respondent's complaint alleges:

"That on said 25th day of April, 1911, plaintiff was working at a place in said level No. 2 at a point about fifty (50) feet from the face thereof, and about 5 a. m. on the said date, plaintiff had occasion to walk towards the face of said level, and while so doing, the light carried by him ignited the gas collected in said level, causing an explosion and thereby inflicting upon the plaintiff the injuries hereinafter set forth. That on the day of said accident to plaintiff as aforesaid, upon going to work in said mine, plaintiff was not furnished with a safety lamp, and was advised by the defendant that the same was not necessary or required, and was informed by the defendant through the notices on said bulletin board that said mine and the level on which he was to work were free from said gas. The plaintiff in no way contributed to the injuries sustained by reason of said accident."

Rem. & Bal. Code, § 7400, provides:

"In every working of a coal mine approaching any place where there is likely to be an accumulation of explosive gases, or in any working where there is imminent danger from explosive gases, no light, lamp, or fire other than a magnetic locked, air locked or lead lock safety lamp shall be allowed or used, except by mine superintendents . . . who may use such lamps as may be approved by the state mine inspector."

The appellant contends that, in paragraph 7 of the complaint, there is no allegation of negligence in the failure to require the use of a safety lamp, and that the allegation therein contained referring to safety lamps only goes to the effect of alleging that, on the day in question, the failure to furnish a safety lamp was an indication that the mine was not on that day gaseous. The complaint is not artfully drawn; but for the purposes of this decision we will assume, without deciding, that the allegation is sufficient. The question then arises, Did the defendant fail to furnish the plaintiff with a safety lamp as required by the statute? The measure of the appellant's duty is the statute. This court,

in *Delaski v. Northwestern Imp. Co.*, 61 Wash. 255, 112 Pac. 341, said:

"The provisions of the statute measure the respondent's duty. The legislature, in recognition of the hazards of working in coal mines, has made careful provisions for their inspection, and imposed imperative duties upon those who own and operate them. The purpose of the law is to provide a reasonably safe place for the men to work. A failure to observe these provisions is negligence *per se.*"

An inspection of the mine was made every morning before any of the men were permitted to enter it. If, from this inspection, it was discovered that the mine was gaseous, that fact would be noted on the bulletin board erected at the mouth of the mine. If the board was clear when the men went to work, it was, in effect, a declaration that the mine was free from gas. When the respondent entered the mine at the beginning of the third shift, on the night of April 24, 1911, the bulletin board was clear. As has already been stated, the men on all three shifts working in this level used open lights, and there was no indication of gases until the instant of the accident. The statute does not require the use of a safety lamp in all coal mines and at all events. But it does require the use of a safety lamp, (1) in the working of every coal mine "approaching any place where there is likely to be an accumulation of explosive gases;" or (2) in any working "where there is imminent danger from explosive gases." There is no evidence in the record which shows that the development work then being prosecuted was approaching a place where there was likely to be an accumulation of explosive gases, or that there was imminent danger from explosive gases.

But the respondent contends that the appellant admitted that this was a gaseous mine, and that this admission brings it within the statute. This contention is based upon a colloquy which took place during the trial, between the counsel for the respective parties, while the respondent was under

cross-examination. The appellant's counsel, being interrupted by counsel for the respondent, retorted in effect that it was a gaseous mine and gas was likely to come quickly in some parts of it. This retort, made in reply to a fortuitous interruption by opposing counsel, does not rise to the dignity of an admission. But if it were assumed that it did, it still is qualified in such a way as to be of no avail to the respondent. The evidence in the case was therefore not sufficient to raise a question of fact to be presented to the jury.

The motion for judgment notwithstanding the verdict should have been granted. The case will be reversed, and remanded with direction to the superior court to enter a judgment for the appellant notwithstanding the verdict.

MOUNT, ELLIS, and MORRIS, JJ., concur.