[Civ. No. 9035. First Appellate District, Division One.—December 26, 1934.]

FRED N. COATS, Plaintiff and Appellant, v. GENERAL MOTORS CORPORATION (a Corporation), Defendant and Appellant.

Pillsbury, Madison & Sutro, Donahue, Hynes & Hamlin, Alfred Sutro, Eugene M. Prince, Eugene D. Bennett and O. D. Hamlin, Jr., for Plaintiff and Appellant.

Fitzgerald, Abbott & Beardsley for Defendant and Appellant.

THE COURT.—An action to recover the value of certain shares of corporate stock.

According to plaintiff's complaint all the capital stock of Chevrolet Motor Company of California was owned by Chevrolet Motor Company, and all the capital stock of the latter corporation was owned by defendant General Motors Corporation.

Plaintiff on January 1, 1924, to January 1, 1926, inclusive, was employed by the California corporation as vice-president and one of its general sales managers. He alleged that in consideration of his services the defendants, pursuant to a bonus plan which they had adopted, awarded to him certain shares of the common stock of the General Motors Corporation; that these shares were so awarded during the years 1924, 1925 and 1926, it being agreed that certificates representing the same should issue as follows: one-quarter thereof at the time of the award and one-quarter on or about the first day of January of each year thereafter until all had been issued; that on or about September 11, 1926, the defendant General Motors Corporation declared a stock dividend on the stock previously awarded. It was further alleged that from time to time, pursuant to amendments to the articles of incorporation of the General Motors Corporation, stock of different par values and of different proportions was substituted for the stock previously authorized by its articles, and that when he was discharged from defendant's employ he was entitled to have issued to him 131 shares of dividend stock and 723¼ shares of bonus stock, and that defendants refused to deliver the same or any part thereof, to his damage in the amount of its market value with interest.

Defendants answered separately. They denied certain portions of plaintiff's complaint, and averred as a special defense that under the stock bonus plan relied upon by

plaintiff all stock awards were subject to the condition that should the employee be dismissed because of unsatisfactory service—of which the executive committee of General Motors Corporation was to be the sole judge—all stock which had not been issued to the employee reverted to the bonus fund, and that plaintiff was dismissed because of unsatisfactory service; further, that upon the termination of his employment certain money was paid to him, which he accepted in full payment and satisfaction of all his claims against defendant under the bonus plan.

It was stipulated at the trial that the shares claimed by plaintiff and which the General Motors Corporation refused to deliver were the property alleged in the complaint; further, that the value of the dividend shares was $25,395.73, and of the bonus shares $103,927.25, and that accruing interest had increased plaintiff's total claim to $129,323.18.

After a trial before a jury the court directed a verdict in favor of plaintiff and against General Motors Corporation for the value of the dividend shares with interest, and in favor of said corporation in respect of plaintiff's complaint for the bonus shares. It also directed a verdict in favor of the other corporate defendants. The respective motions for a new trial made by plaintiff and defendant General Motors Corporation were denied.

Plaintiff has appealed from so much of the judgment entered upon the verdict as denies him the value of the bonus stock, and the General Motors Corporation has appealed from the portion in favor of the plaintiff and against it.

It was provided by a resolution of the board of directors of General Motors Corporation (which corporation adopted the bonus plan) that a bonus custodian should be appointed, to whom all stock allotted to each beneficiary should issue and by whom certificates should be delivered to the beneficiaries from time to time in accordance with the plan. The resolution further provided:

"Paragraph 5. If a beneficiary leaves the service of the corporation of his own volition, or is dismissed because of unsatisfactory service (of which the executive committee shall be the sole judge) that portion of his bonus represented at the time by the debit balance of his account shall revert to the bonus fund, and a certificate for the portion of his bonus represented by the total credits in his account shall

be delivered to the beneficiary free from all restrictions, provided, however, that no fractional shares shall be issued. Any fractional share to which the beneficiary is so entitled shall be purchased at the then market value thereof out of the money in the bonus fund. All amounts forfeited by such beneficiary shall revert to the bonus fund.

"Paragraph 6. Should a beneficiary be dismissed from the service of the corporation for no fault of his own with an entirely satisfactory record (of which the executive committee shall be the sole judge) he may continue a beneficiary under the bonus plan to such an extent as the executive committee may determine. . . .

"Paragraph 8. Subject to the rights of the bonus custodian to retain possession of the stock certificates, or to transfer the stock as herein provided, an award shall vest the beneficiary with all the rights of a stockholder in the stock awarded, including the right to vote and to receive dividends thereon, but excepting, however, the right to sell, assign or pledge his interest in the stock."

On February 11, 1927, following plaintiff's discharge the executive committee of defendant General Motors Corporation (which corporation will be hereinafter referred to as the defendant), after reciting therein that plaintiff had left the service of the company, resolved "In view of the fact that the services of Mr. F. N. Coats were terminated January 1, 1927, because his work had not been satisfactory to the corporation all bonuses due him be canceled as of that date".

Defendant concedes that the awards of stock were not intended as gifts but constituted compensation in addition to the employee's regular salary; and that as to the percentage of the award which under the bonus plan was to issue at the time the award was made, the ownership thereof vested unconditionally in the employee; but as to the remaining three-fourths it is contended that an employee's right was qualified and conditional, and that upon his discharge because of unsatisfactory service his rights to all undelivered stock terminated.

As stated, the bonus plan provided that one-fourth of the bonus stock awarded should be immediately delivered, and the remainder in equal parts at the end of the first, second and third years thereafter, and further, that certifi-

cates for the undelivered stock should issue to a bonus custodian who should hold the same for the beneficiary. The latter was, however, required to execute to the custodian an irrevocable power of attorney, authorizing the retransfer of the undelivered stock in case the beneficiary should leave the service of the company or be dismissed. Subject to these provisions and paragraph 5 of the plan quoted above the award vested in the beneficiary all the rights of a stockholder, including the right to vote the stock and to receive dividends thereon but not "the right to sell, assign or pledge his interest in the stock".

█ It is the general rule that under a stipulation that the performance of a contract by one of the parties thereto, where fancy, taste, sensibility or judgment are involved, shall be to the satisfaction of the other, the latter is the sole judge of his satisfaction without regard to the reasonableness of his decision (13 Cor. Jur., Contracts, sec. 768, p. 675; 6 Cal. Jur., Contracts, secs. 249, 250, pp. 417, 419), and the rule applies to the employment of servants (*Tiffany* v. *Pacific Sewer-pipe Co.*, 180 Cal. 700 [182 Pac. 428, 6 A. L. R. 1493]; *Van Demark* v. *California etc. Assn.*, 43 Cal. App. 685 [185 Pac. 866]; *Schuyler* v. *Pantages*, 54 Cal. App. 83 [201 Pac. 137]; *Brenner* v. *Redlick Furniture Co.*, 113 Cal. App. 343 [298 Pac. 62]; *Clark* v. *New England T. & T. Co.*, 229 Mass. 1 [118 N. E. 348]; *Joseph Campbell Preserve Co.* v. *Holcomb*, 67 Kan. 48 [72 Pac. 552, 554]; *Liebenor* v. *Philippine Vegetable Oil Co.*, 37 Philippine, 60).

█ The relation of master and servant is private, confidential, intimate and personal, and a stipulation that an employee is to perform the duties of his position so as to be deemed satisfactory to his employer is equivalent to an agreement that his engagement is dependent upon his service being agreeable to the employer (*Glyn* v. *Miner*, 6 Misc. 637 [27 N. Y. Supp. 341]; *Kramer* v. *Wien*, 92 Misc. 159 [155 N. Y. Supp. 193]). It was said in *Tiffany* v. *Pacific Sewer-pipe Co.*, *supra*, that the reasonableness of the employer's dissatisfaction should seldom be a question for the jury unless there are special provisions in the contract or extraordinary circumstances in the situation of the contracting parties requiring such a construction of the contract. In that case, however, as pointed out by the court, there was

evidence of dissatisfaction with the quality of the employee's work and no sufficient evidence to the contrary.

It is equally well settled that the employer must act in good faith; and where there is evidence tending to show that the discharge was due to reasons other than dissatisfaction with the services the question is one for the jury (*Trevellick* v. *Western etc. Assn.*, 237 Ill. App. 493; *Chicago etc. Ry. Co.* v. *Blanchard*, 35 Ill. App. 481; *Gwynne* v. *Hitchner*, 67 N. J. L. 654 [52 Atl. 997]; *Summers* v. *Colver*, 38 App. Div. 553 [56 N. Y. Supp. 624]; *Diamond* v. *Mendelsohn*, 156 App. Div. 636 [141 N. Y. Supp. 775]; *Beiner* v. *Goetz*, 81 Misc. 244 [142 N. Y. Supp. 530]; *George A. Fuller Co.* v. *Brown*, 15 Fed. (2d) 672; *McCartney* v. *Badovinac*, 62 Colo. 76 [160 Pac. 190, L. R. A. 1917A, 1146]; *Winship* v. *Colbath*, 123 Me. 70 [121 Atl. 236]).

Plaintiff claims that there was evidence sufficient to support a finding in his favor on this issue, and that consequently the direction of a verdict in favor of the defendant was erroneous.

The evidence on which he relies consists of certain letters which he received during the years 1923, 1924, 1925 and 1926 from Sloan, the president of defendant, announcing the awards of bonus stock and commending his work. The last letter from the president was dated December 7, 1926; and in addition he received during the same month a letter from the president of the Chevrolet Motor Co., stating his appreciation of plaintiff's work during the year 1926. Shortly after the receipt of the letters mentioned plaintiff was notified to attend a sales conference of the zone managers of the Chevrolet company at Detroit, where he arrived on January 2, 1927. Upon his arrival he was told by Grant, the vice-president and general manager of the last-named company, who was plaintiff's immediate superior, that he had decided to make a change of management on the Pacific coast. Plaintiff testified that Grant stated that he personally had no fault to find with plaintiff's work, but that "there has been so much pressure brought to bear upon me from the higher-ups in the General Motors that I don't feel that I can go against it any longer". Further, that Grant then assured him that he should receive the stock which had theretofore been awarded to him but not delivered. Grant was not an officer of the General Motors

Corporation. Plaintiff also narrated a conversation between himself, Knudsen and Grant in July, 1925, wherein the latter stated in substance that one Fisher, a member of the executive committee of the defendant company, was dissatisfied because plaintiff had refused to give the exclusive agency for Chevrolet cars in Los Angeles to one Baldwin, one of Fisher's friends. Grant testified in this connection that complaint had been made by Baldwin to Fisher regarding plaintiff's business methods. In his brief plaintiff refers to two letters dated in December, 1926, which passed between the president of defendant company—who was also a member of its executive committee— and another member of the same committee, questioning plaintiff's qualifications for the position he held. The two concluded that the question of plaintiff's retention should remain in abeyance pending further investigation. The record contains no direct evidence that in making their finding that plaintiff's discharge was due to dissatisfaction with his services the committee was not acting in good faith. However, plaintiff contends that this might reasonably be inferred, from Sloan's statements and the previously expressed satisfaction with his services by Knudsen and Grant, that there was no dissatisfaction with his work, and that his discharge was the result of his refusal to grant the privileges mentioned to Baldwin.

In the absence of evidence of his authority the promise by Grant, who was an officer of a subsidiary controlled by defendant corporation, that plaintiff should receive the stock was not binding on the latter corporation or the executive committee (14A Cor. Jur., Corporations, sec. 1862, p. 94; *Campbell* v. *Hanford*, 67 Cal. App. 155 [227 Pac. 234]). The same rule applies to the president or manager of the corporation (6A Cal. Jur., secs. 655, 657, 659, pp. 1153, 1159, 1160; *Black* v. *Harrison Home Co.*, 155 Cal. 121 [99 Pac. 494]). Nevertheless both Knudsen and Grant were plaintiff's immediate superiors, and appear to have had authority to employ or discharge persons holding positions of the kind occupied by plaintiff with the Chevrolet companies. As testified by Sloan, the chief executive of Chevrolet Motor Co. "had complete authority" over all the operations of the Chevrolet Motor Co. of California, and he, Sloan, had none except through the chief

executive. Sloan also testified: "I am in a sense in the relationship to the chief executive as a large stockholder would be to a corporation, but he operates on his own initiative," and further, that the recommendation as respects plaintiff's discharge and the matter of his unmatured bonuses came from the executive mentioned, and that the executive committee would not necessarily know that the discharge of an employee was contemplated or the fact of his discharge until after the event.

While the testimony of Sloan and the other witness called by defendant taken most favorably to the latter would justify the finding of the executive committee, the jury would not have been bound by this testimony; and sufficient appears to justify the conclusion that plaintiff's discharge was not due to dissatisfaction with his services rendered the company or companies by which he was employed, but to dissatisfaction with his business policy by a member of the committee who sought an advantage for the benefit of his friend. There being evidence tending to show this, the question, other things being equal, would be for the jury.

█ In this connection defendant claims that a remark by plaintiff's counsel during the cross-examination of the witness Sloan, whose deposition was being taken, constituted an admission that defendant acted in good faith.

The witness was asked if the cancellation or continued delivery of bonus stock to a discharged employee was determined by the arbitrary will of the executive committee. The witness excepted to the use of the word "arbitrary" as implying unfairness, and counsel replied: "There is no desire to impute that to you, Mr. Sloan." Mere incidental or ambiguous statements by counsel will not bind or be admissible against the client where there is no such formality in the making of the statements as to indicate an intention that they should be taken as admissions. Obviously such was not the purpose here, and the remark lacked the force or effect of an admission (Thornton, Attorneys at Law, vol. 1, pp. 343, 346; *Wutchumna Water Co.* v. *Pogue*, 151 Cal. 105, 109 [90 Pac. 362]; *Bakersfield etc. R. R. Co.* v. *Fairbanks etc. Co.*, 20 Cal. App. 412, 414 [129 Pac. 610]; *Adelstein* v. *Greenberg*, 77 Cal. App. 548 [247 Pac. 520]; *Sichterman* v. *R. M. Hollingshead Co.*, 117 Cal.

App. 504 [4 Pac. (2d) 181]; *Dollar* v. *Northwestern Improvement Co.*, 72 Wash. 1 [129 Pac. 578, 580]; *McKeen* v. *Gammon*, 33 Me. 187).

█ In March, 1927, the plaintiff received from the defendant a check for $41.88 in lieu of a fractional share of its common stock to which, according to defendant's interpretation of the bonus plan, plaintiff was entitled. At the same time he signed a writing which was as follows:
"SETTLEMENT:

The undersigned beneficiary, having examined the above statement, hereby acknowledges the receipt from the bonus custodian of General Motors Corporation of the following securities or cash (or both) in full settlement of bonus awards:

"Check No. 5409 to the order of the undersigned $41.88.

"Certificate of General Motors Corporation stock.

"Number          Shares          Class

"(Sign here)          (signed)   FRED N. COATS.

"(Sign exactly as name appears at top of page.)

"Witness (signed)       L. E. WHITMERE

"Date March 30, 1927."

Attached was a statement showing the bonus stock awarded and issued to plaintiff and also of the dividend stock. A letter from defendant addressed to a bank which delivered the check referred to the same as "covering final bonus settlement". Defendant contends that the writing constituted a release of all claims both to bonus and dividend stock, and was sufficient to have this effect without a new consideration (Civ. Code, sec. 1541). Plaintiff testified that he had previously received other checks covering fractional shares which under the bonus plan defendant had the right to purchase; that he understood the writing to be merely a receipt for another fractional share to which he was entitled.

Part performance of an obligation either before or after breach, when expressly accepted by the creditor in writing in satisfaction, though without any new consideration extinguishes the obligation (Civ. Code, sec. 1524); and it has been held that no particular form or set of words is essential to the validity of a release either at law or in equity (53 Cor. Jur., Release, sec. 5, p. 1197). Usually a release is an instrument of such a contractual nature that it is

within the rule prohibiting parol evidence to vary or contradict it (22 Cor. Jur., Evidence, sec. 1526, p. 1140). But such a writing may be so similar in its character to a receipt that the rules of evidence applicable to receipts may be applied, and it may be explained, qualified or contradicted by parol (*San Pedro Lumber Co.* v. *Schroeter,* 156 Cal. 158 [103 Pac. 888]; *Carpenter* v. *Markham,* 172 Cal. 112 [155 Pac. 644]). While ordinarily a receipt in full if uncontradicted or unexplained stands as conclusive (*McKenzie* v. *Ray,* 168 Cal. 618 [143 Pac. 1018]), the mere fact that it expresses on its face that it is ''in full of all demands'' or of certain demands does not make it of such a contractual nature as to preclude admission of parol evidence (22 Cor. Jur., Evidence, sec. 1525, p. 1140; *Brown* v. *Crown Gold Milling Co.,* 150 Cal.. 376 [89 Pac. 86]; *Jersey Island etc. Co.* v. *Whitney,* 149 Cal. 269 [86 Pac. 509]). Moreover, the general rule for the interpretation of contracts applies to writings alleged to have the effect here claimed (22 Cal. Jur., Release, sec. 10, p. 760) as well as to receipts (*Brown* v. *Crown Gold Milling Co.,* supra); and where the intention is ambiguously expressed the writing must be construed most strongly against the party who drew it (Civ. Code, sec. 1654). In such cases evidence of the circumstances of its execution is admissible (*First National Bank* v. *Bowers,* 141 Cal. 253 [74 Pac. 856]; *Lemm* v. *Stillwater L. & C. Co.,* 217 Cal. 474 [19 Pac. (2d) 785]) for the purpose of showing what matters entered into the settlement (*Jersey Island etc. Co.* v. *Whitney, supra; Snyder* v. *Regan,* 5 Cal. App. 64 [89 Pac. 852]; *California Packers Co.* v. *Merritt Fruit Co.,* 6 Cal. App. 507 [92 Pac. 509]). And where conflicting parol evidence in explanation is introduced the question is one for the jury (*Davis* v. *Diamond Carriage etc. Co.,* 146 Cal. 59 [79 Pac. 596]; *Brusseau* v. *Potter's Estate,* 217 Mich. 165 [185 N. W. 836]; *Feldman* v. *Comensky,* (Mo. App.) 249 S. W. 430; *Edblad* v. *Brower,* 178 Minn. 465 [227 N. W. 493]). This rule is not affected by the claim that the writing constituted an accord and satisfaction. The question of intention in such cases is one of fact (*Lewis* v. *Covillaud,* 21 Cal. 178; *Everhardy* v. *Union Finance Co.,* 115 Cal. App. 460 [1 Pac. (2d) 1024]), and the writing is open to explanation (*Car-*

*penter* v. *Markham, supra; Pacific Coast Casualty Co.* v. *Home Telephone etc. Co.,* 11 Cal. App. 712 [106 Pac. 262]).

We are satisfied that under the above rules evidence in explanation or qualification of the writing in question was admissible. This is peculiarly true with respect to the contention that it was the intention to make a final settlement of plaintiff's claim to the dividend stock. As shown by paragraph 8 of the bonus plan those receiving bonus stock subject to the powers of the bonus custodian and the restriction upon the power of the beneficiary to sell, assign or pledge his interest in such stock were given "all the rights of a stockholder therein . . . including the right of . . . to receive dividends". A number of cash dividends on the bonus stock awarded plaintiff were declared and paid in full; the stock dividend was the only one of the kind during the period of plaintiff's employment and was declared on August 12, 1926, a little over four months prior to plaintiff's discharge. It is not contended that this or the other dividends were not declared from profits earned by the defendant; and the dividend declared on the above date was not confined to bonus stock. So far as shown, the directors in declaring the same made no attempt by their resolution to limit the rights of the holders of such stock to receive the dividend in full in the same manner as other shareholders. ■ On September 9, 1926, after the stock dividend was declared, a letter from the treasurer of defendant company was addressed "to beneficiaries under the bonus plan of the General Motors Corporation". Therein they were told that the stock dividend so far as they were concerned would be distributed according to the method pursued under the bonus plan for the delivery of the bonus stock. The letter stated that "the consistent operation and execution of the provisions of the bonus plan" required this. No authority for this course appears, but the defendants contend that the bonus plan indicates an intention that such dividends should be withheld in the same manner as the bonus stock. The bonus plan makes no mention of stock dividends but, as stated, it does with specific exceptions give to owners of bonus stock, whether the same be delivered or not, all the rights of stockholders therein, "including the right to receive dividends". The language appears clear and explicit and should govern accordingly. (Civ. Code, sec. 1638.)

Moreover, it being conceded that the plan was prepared and its language chosen by defendant, it must in case of uncertainty be interpreted most strongly against it. (Civ. Code, sec. 1654.) We are unable to find anything in the wording of the plan which reasonably supports the conclusion that stock dividends were to be treated in any manner different from other dividends, or that it was the intention that either should be withheld from the beneficiaries.

Plaintiff claims that if defendant had the right to terminate his interest in the bonus stock the evidence shows that this was waived, or that defendant was estopped to assert it. This is based upon statements by Grant and Sloan which are referred to above; but neither was shown to have had authority to bind the corporation or its committee by any promises or declarations with respect to the bonus plan. Nor does the record disclose any facts which would estop the defendant, as no act of the corporation preceding or following his discharge can reasonably be said to have caused him to change his position or to rely thereon to his detriment. The corporation's right to discharge the plaintiff is not disputed, and he was informed of its action immediately thereafter, namely, on January 2, 1927.

The defendant claims that plaintiff's delay in the commencement of his suit and his conduct preceding and following his discharge show that he acquiesced in the company's action, and that the allegations of his complaint tend to show that no distinction was made by either party between the bonus and dividend stock.

Even in equity mere delay in commencing suit for a period less than that limited by statute is no ground for refusing relief unless prejudice is shown (*Newport* v. *Hatton*, 195 Cal. 132 [231 Pac. 987]), and in actions at law the statute rather than laches furnishes the rule of decision. (*Brownrigg* v. *deFrees*, 196 Cal. 534 [238 Pac. 714]; *San Francisco Credit Clearing House* v. *Wells*, 196 Cal. 701 [239 Pac. 319].) If relevant as a fact in the nature of an implied admission tending to cast doubt on the existence of plaintiff's alleged right, the question of its weight was for the jury. (22 Cor. Jur., Evidence, secs. 507, 508, p. 426; *McGregor* v. *Knowlden*, 102 Cal. App. 42 [282 Pac. 438].) The same is true of the fact that plaintiff made no protest against the treasurer's declaration that the distribution of dividend

stock should be governed by the same rules as the bonus stock. In this connection it was shown that plaintiff's employment terminated very shortly after the declaration, and under the circumstances we cannot say that he was precluded by his silence.

As urged by defendant, the practical construction placed upon a doubtful contract by the parties is evidence of its meaning (6 Cal. Jur., Contracts, sec. 184, p. 304; *Lemm* v. *Stillwater L. & C. Co., supra*), and the legal effect of the conduct of the parties where it is not equivocal is for the court to pronounce. (*Creighton* v. *Gregory,* 142 Cal. 34 [75 Pac. 569]; *Lapp-Gifford Co.* v. *Muscoy Water Co.,* 166 Cal. 25 [134 Pac. 989].) It has been held that where undisputed extrinsic facts and circumstances are introduced to aid in the construction of a contract it is the duty of the court and not the function of the jury to consider the instrument in the light of such evidence. (*California W. D. Co.* v. *California M. O. Co.,* 178 Cal. 337 [177 Pac. 849]; *O'Connor* v. *West Sacramento Co.,* 189 Cal. 7 [207 Pac. 527, 532].) As stated in the O'Connor case, "if such circumstances are in dispute, and the meaning of the contract is to be determined one way in one view of the facts, and another way in accordance with another view of the facts, then the determination of the disputed fact must be left to the jury". As observed by Professor Williston (Williston on Contracts, sec. 616), "it is obvious that the meaning of language is a question of fact. The code or standard by which it is sought to test the meaning must be discovered frequently by evidence of the facts and circumstances concerning the making of the contract. Even though the question concerns merely the normal meaning of a word as found in the dictionaries, it is still a question of fact if the word fact is used in a literal sense. But, as Professor Thayer has said, (Preliminary Treatise on Evidence, 202), 'the judges have always answered a multitude of questions of ultimate fact, of fact which forms part of the issue. It is true that this is often disguised by calling them questions of law'. The reason for this seems to have been a distrust of the jury's ability to answer questions of fact which call for nice discrimination—an educated mind. The construction of written documents has largely been withdrawn from the jury in this way. The general rule is that

construction of a writing is for the court. Where, however, the meaning of a writing is uncertain or ambiguous, and parol evidence is introduced in aid of its interpretation, the question of its meaning is for the jury.'' (See, also, Page on Contracts, 2d ed., sec. 2022.) (*Hope* v. *The Maccabees*, 91 N. J. L. 148 [102 Atl. 689, 1 A. L. R. 455]; *Waldrep* v. *Exchange State Bank*, 81 Okl. 162 [197 Pac. 509, 14 A. L. R. 747]; *Geoghegan Sons & Co.* v. *Arbuckle Brothers*, 139 Va. 92 [123 S. E. 387, 36 A. L. R. 399].) That the question is essentially one of fact has also been recognized in principle by the courts of this jurisdiction. (*Kautz* v. *Zurich etc. Ins. Co.*, 212 Cal. 576 [300 Pac. 34]; *Thompson* v. *Leak*, 135 Cal. App. 544 [27 Pac. (2d) 795].)

The same rule with respect to the function of a jury applies where the question is the construction placed upon a writing by the parties and their acts in that connection are equivocal or reasonably susceptible of different interpretations. (Thompson, Trial, 2d ed., sec. 1081; Page on Contracts, 2d ed., secs. 2063, 2064; 64 Cor. Jur., Trial, sec. 353, p. 363; *Reissner* v. *Oxley*, 80 Ind. 580; *Reedy Elevator & Mfg. Co.* v. *Mertz & Hale*, 107 Mo. App. 28 [80 S. W. 684]; *Carp* v. *Queen Ins. Co.*, 116 Mo. App. 528 [92 S. W. 1137]; *Camp* v. *Wilson*, 97 Va. 265 [33 S. E. 591].) This is in accord with the general rule that although there is no conflict in the evidence, if the inferences fairly deducible therefrom are such that different conclusions might rationally be drawn, the conclusion reached by the jury will not be disturbed. (2 Cal. Jur., Appeal and Error, sec. 549, p. 934.)

We find no error in the court's denial of the defendant's motion for a new trial on the ground of surprise. The affidavits on this question were conflicting. That filed on behalf of plaintiff shows sufficiently that defendant's counsel was apprised of the matters of which he complains. Moreover, it appears that all the evidence in the case was in at noon on November 10, 1932; the motions for directed verdicts were argued during the afternoon of that day and on November 13th. On the following Monday a verdict was directed. There was ample time for an application for relief by way of continuance but no motion therefor was made. Under the circumstances we cannot say that the

denial of a new trial was an abuse of discretion. (20 Cal. Jur., New Trial, secs. 53, 141, pp. 75, 216.)

We are satisfied in view of the evidence that different inferences might fairly be drawn therefrom, even in the many instances where the same was not directly conflicting, and that conclusions either way would be supported. Such being the case the issues should have been determined by the jury, and a directed verdict was erroneous.

In passing upon a motion for a directed verdict the trial court may not weigh the evidence or judge of the credibility of the witnesses; and unless it can be said as a matter of law that there is but one conclusion reasonably deducible from the evidence the trial court is not justified in taking the case from the jury. (*Estate of Flood*, 217 Cal. 763 [21 Pac. (2d) 579].)

The portions of the judgment appealed from are reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 25, 1935, and applications by appellant and respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, were denied by the Supreme Court on February 21, 1935.

Waste, C. J., and Preston, J., voted for a hearing.